655 P.2d 1331

The STATE of Arizona, Appellee,

v.

John ALLRED and Sandra Allred, Appellants.

No. 2 CA–CR 2428.

Court of Appeals of Arizona, Division 2.

May 4, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and David R. Cole, Asst. Attys. Gen., Phoenix, for appellee.

Peter J. Cahill, Globe, for appellants.

OPINION

HOWARD, Chief Judge.

In a consolidated trial appellant John Allred was indicted and tried for child molestation and appellant Sandra Allred was indicted and tried for the crime of first-degree hindering prosecution. The victim was Laura Allred, appellant's four-year-old daughter. Both defendants were found guilty and John Allred was sentenced to seven years in the Arizona State Prison, while Sandra Allred was placed on probation.

The record shows that Edith Hughes, John Allred's niece, was providing day care for Laura and her seven-year-old half-sister, Faith Davis. One day Laura fell off her bicycle at the Hughes house. Hughes examined her and noticed no injuries of any kind and later recalled that Laura never complained about any soreness or bleeding in the groin area. Later that day John Allred came and took the girls home.

The next morning the two youngsters were brought back to the Hughes home. After Laura arrived, she and Hughes engaged in a conversation and as a result of that conversation Hughes decided to have Laura examined by a doctor. Before she could make an appointment, however, Sandra Allred called and asked Hughes to take Laura to the doctor because Laura was bleeding from her vagina. Sandra Allred told Hughes that the injury had been caused by the bicycle fall the previous af-

ternoon. Hughes checked Laura to see if she were still bleeding and there was a small amount of blood on Laura's panties at that time. Hughes then took Laura to see Dr. Lynn Platt, a pediatrician. After examining Laura, the doctor concluded that someone had attempted to have sexual intercourse with her. This was based upon the fact that Laura's injuries included bruises, abrasions, tears, swelling and discoloration and that her hymen was not present. Dr. Platt believed that the multiple injuries could not have been caused by a single fall, and further noted that they were not compatible with the bicycle explanation provided by the mother. She also was of the opinion that the injuries were approximately twelve hours old when the examination took place and could not have been caused by the penetration of a single finger into Laura's vagina. Excluding injuries requiring surgery, Dr. Platt concluded that Laura's injuries were among the most traumatic injuries she had seen in her several years of internship and practice.

Laura was called as a witness for the prosecution. She testified that she got hurt as a result of falling off a bicycle and that her father had not done anything to her. Over appellant's objections, the state was allowed to cross-examine her as to prior inconsistent statements she had made to Tommie Rasmussen, an investigator for the Gila County Attorney's Office. Rasmussen was later called as a witness by the prosecution and, over appellants' objections, he testified that Laura had told him her father had put his fingers between her legs and inside her and had hurt her. Another prosecution witness, James A. McDonald, a psychologist, also testified that Laura had told him that her father had put his fingers into her everyday and then got on top of her.

Sandra Allred was charged with the crime of hindering prosecution. The state alleged this crime to have occurred by Sandra telling her daughters to tell people that the bike accident caused Laura's injuries so that they would not be taken out of their home by the welfare department. Faith, the daughter of Sandra Allred and step-

daughter of John Allred, testified as a witness for the prosecution and stated that, in fact, her mother did not tell her or Laura anything after the alleged molestation, and, over appellants' objections, that she (Faith) had not told Rasmussen that if welfare found out, they could not live at home anymore. Rasmussen then testified, over appellants' objections, that Faith had previously told him that her mother had instructed her on what to say about the incident and that she repeated it for the reason that she (Faith) did not want to be taken out of the family home and put in a foster home.

■ Appellants contend that the trial court erred in allowing the impeachment of both Laura and Faith by the use of inconsistent statements and by allowing these statements to be used substantively. We disagree.

In *State v. Cruz*, 128 Ariz. 538, 627 P.2d 689 (1981), the court was faced with this situation. Cruz was charged with second-degree murder. His sister testified at the trial and denied having told the victim's girlfriend that the defendant had told her he was going to shoot the victim. Over the defendant's objection, the trial court allowed the victim's girlfriend to testify about a statement that the sister had allegedly made which repeated the inculpatory statement allegedly made by the defendant. Our supreme court reversed, holding that since impeachment testimony can be used substantively, and because the defendant's alleged statement established his guilt and, further, because the situation at trial came down to a swearing contest between the sister and the girlfriend, the court erred in allowing the girlfriend's testimony. The court in *Cruz* stated:

> "Even though an out-of-court statement may be used to cast doubt on a witness' credibility, when it contains the dual purpose of tending to prove a defendant's guilt, it should not be admitted."

This broad statement causes some difficulty. Appellants seize upon it and contend that *Cruz* stands for the proposition that any prior inconsistent statements which bear on the defendants' guilt cannot be

used. We do not agree and believe that *Cruz* should be limited strictly to its facts. In fact, it is evident that the supreme court is so limiting *Cruz* since in the recent case of *State v. Emery,* 131 Ariz. 493, 642 P.2d 838 (1982), the court found that a prior inconsistent statement concerning whether the witness saw the accused stab the victim would have been substantively admissible into evidence had the state given the witness an opportunity to explain the prior inconsistent statement. We find that Laura's prior inconsistent statement does not fall within the factual situation in *Cruz* and the trial court did not err in admitting it substantively.

The statements made by the mother, Sandra Allred, formed the basis of the hindrance of prosecution charge and thus were not hearsay because they had independent legal significance. See Udall & Livermore, Law of Evidence, Vol. 1, § 122 (1982). Her statements to her daughters constituted the crime. The factual situation here differs from *Cruz* and we decline to extend *Cruz* beyond its peculiar facts.

Affirmed.

HATHAWAY and BEN C. BIRDSALL, JJ., concur.